IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

TERESA A. STEELE,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C14-2022

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     A.   Steele's Education and Employment Background . . . . . . . . . . . . . 4
     B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . 4
          1.   Steele's Testimony . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          2.   Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . . 5
     C.   Steele's Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . 12
     B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . 14
          1.   Dr. Chowdhry's Opinions . . . . . . . . . . . . . . . . . . . . . . 15
          2.   Non-Examining Consultative Medical Source Opinions . . . . 17
          3.   Initial Disability Review . . . . . . . . . . . . . . . . . . . . . . 21
          4.   Credibility Determination . . . . . . . . . . . . . . . . . . . . . 23
          5.   Hypothetical Question . . . . . . . . . . . . . . . . . . . . . . . 27

V.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

VI.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Teresa A. Steele on May 6, 2014, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Steele asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Steele requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id*. (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

---

[1] On June 23, 2014, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

3

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## III.  FACTS

### A.  Steele's Education and Employment Background

Steele was born in 1964.  In school, she completed the eleventh grade.  In the past, Steele engaged in work as a home caregiver, and off-and-on as a production line packager through a temporary work agency.

### B.  Administrative Hearing Testimony

#### 1.  Steele's Testimony

At the administrative hearing, the ALJ asked Steele what is her biggest obstacle to obtaining and keeping full-time employment.  Steele responded that her biggest obstacle is her mental health problems, including having difficulty learning new things or learning at a slow pace.  Steele also stated that her problems with anxiety make full-time work difficult.  Specially, Steele testified that her anxiety makes her very emotional, causing her to sometimes "lash out" at people.  Lastly, Steele indicated that her mental health problems also include having a poor memory.

Next, the ALJ questioned Steele about her physical problems.  According to Steele, her primary physical impairments include back pain and migraine headaches.  She testified that standing too long causes shooting pain down her back, and into her legs and feet.  She also stated that she can sit for only 30 minutes before needing to get up and walk.  Steele indicated that she can walk about three blocks before pain and shortness of breath affect

her, and require her to rest. With regard to her migraines, Steele explained that she often wakes up with one, and she "can't stand light, noise, or any smell, and I also vomit."[2] In order to alleviate the migraine, she generally takes over-the-counter headache medication, and goes back to sleep for three to four hours, wearing an eye mask. She estimated that she gets approximately five migraines per month. Steele further testified that she had surgery on her right hand, resulting in a loss of grip strength.[3]

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who is:

> limited to performing sedentary work[.] . . . The worker can stoop, crouch, kneel, and crawl only occasionally, cannot climb ladders, ropes, or scaffolds. . . . I want you to assume that the worker, through the use of both hands, is able to do all the lifting, carrying, pushing, pulling that would be required by sedentary work, but I want you to assume the worker . . . [has] no use of the, of the ring finger and the small finger on the dominant right hand, but again she is able to, to handle objects with the right hand. She wouldn't be able to do any, any manipulation of objects where one would need to use those two fingers. . . .
>
> And then finally, I'd like you to assume this worker is able to do only the most simple routine and repetitive types of work, work that doesn't require any close attention to detail, work that is so simple and unchanging that the worker need not respond or adjust or react to any changes . . . to the work environment.

(Administrative Record at 81-82.) The vocational expert testified that under such limitations, Steele could perform the following jobs: (1) ticket counter, (2) call out

---

[2] Administrative Record at 58.

[3] Steele testified that she is right-handed.

operator, and (3) telephone quotation clerk. The ALJ added an additional limitation to the hypothetical for the vocational expert to consider, namely, the individual would need an additional 10 minutes of direct contact with a supervisor, every 2 hours, in order for the individual to remain productive throughout the workday. The vocational expert replied that such a limitation would preclude competitive employment.

## C. Steele's Medical History

On December 8, 2005, Steele was referred by her primary care physician to Dr. Robert H. Choi, M.D., for evaluation of low back pain and right leg numbness. In reviewing Steele's symptoms, Dr. Choi noted that:

> [Steele] has been having numbness on the right leg over the past 4 months. This usually starts from her low back and then . . . radiates all the way down to the bottom of her foot. It is tingling and aching. Any activity makes this worse. She feels weak on her low back. She notes some numbness on the right foot. She feels that stress will often make her symptoms worse.

(Administrative Record at 482.) Upon examination, Dr. Choi found that Steele's low back demonstrated "mild diffuse tenderness of the lower lumbar spinal and paraspinal areas on palpation especially on the right side."[4] Dr. Choi diagnosed Steele with S1 radiculopathy on the right side. Dr. Choi ordered an MRI and EMG for further study. Steele returned to Dr. Choi on December 15, 2005. The MRI showed a large disc protrusion at L5 and S1, with some impingement into the S1 nerve roots. The EMG study showed "minimal" denervation. While Dr. Choi felt that surgical intervention would ultimately be necessary, he recommended conservative treatment with a month of physical therapy.

Steele met with Dr. Choi again, on January 16, 2006. Dr. Choi noted that Steele was unable to complete a month of physical therapy. Specifically, Dr. Choi noted that:

---

[4] Administrative Record at 483.

> [Steele] is working at a new job where she has to lift fairly
> frequently. I don't think this is a good idea for her back. I
> will go ahead and take her off of work for a month and get her
> through some intensive physical therapy to see if this would
> help her low back pain. If this is not effective, she will likely
> need a surgical intervention.

(Administrative Record at 480.) Steele returned to Dr. Choi for a follow-up appointment on February 14, 2006. Dr. Choi found that with physical therapy, Steele's "pain has gotten substantially better. Her numbness has also dissipated now."[5] Dr. Choi concluded that surgery was unnecessary, and recommended Steele continue physical therapy exercises at home.

On June 11, 2007, Steele was referred by her primary physician to Dr. Russell Buchanan, M.D., for consultation on back pain, right leg pain, and right foot pain. In reviewing her symptoms, Dr. Buchanan noted that:

> [Steele complains] of years long lumbar pain with right foot
> and leg numbness. She describes the pain as very sharp. She
> takes medicine to dull the pain. The pain travels down the
> posterior leg on the right side to the right foot dorsal aspect.
> Standing, lifting and bending or lying down for any long time
> causes her worst symptoms. Her pain level is 8 on a scale
> from 1 to 10 in the lower back up to 10 on a scale of 1 to 10
> for the right lower extremity. It lasts for hours to days. It
> essentially does not go away. Pain pills, rest and heat improve
> her pain. It is worse with standing, bending and lifting.

(Administrative Record at 501.) Upon examination, Dr. Buchanan found that Steele's gait was "significantly impaired." Dr. Buchanan diagnosed Steele with severe foraminal stenosis due to disc collapse causing L5 radiculopathy bilaterally. Dr. Buchanan also found lumbosacral spondylosis with radiculopathy present. Dr. Buchanan recommended

---

[5] *Id.* at 479.

surgery as treatment. Steele decided against surgery, and Dr. Buchanan recommended epidural steroid injections from Dr. Gayathry Inamdar, M.D.

On July 28, 2008, Steele met with Dr. Inamdar complaining of right lower extremity pain and low back pain. Steel described her pain as sharp and stabbing. She rated her pain at 7 out of 10, with 10 being the most severe pain. Upon examination, Dr. Inamdar diagnosed Steele with right lumbar radiculopathy S1 overlapping L5 distribution and lumbar degenerative disc disease at L5-S1. Because Steele did not want to undergo back surgery, Dr. Inamdar recommended epidural steroid injection therapy as treatment. Steele underwent an epidural steroid injection on July 29, 2008. Steele returned to Dr. Inamdar on March 11, 2009, complaining of recurring low back and right leg pain. Dr. Inamdar noted that Steele had "good" pain relief following injections in July 2008. Specifically, Dr. Inamdar explained that Steele "had good pain relief until now. The pain has recurred. She states the pain as 8 out of 10."[6] Dr. Inamdar treated Steele with a second set of epidural steroid injections on March 24, 2009.

Steele returned to Dr. Inamdar on February 23, 2010, and underwent an MRI on her lumbar spine. The MRI showed: (1) disc degeneration at L4-5; (2) severe disc space narrowing at L5-S1; (3) a small central disc protrusion lateralizing to the right at L5-S1; and (4) mild bilateral neural foraminal narrowing at L4-5 and L5-S1. Dr. Inamdar diagnosed Steele with lumbar degenerative disc disease and low back pain. Dr. Inamdar administered epidural steroid injections as treatment on March 2 and 24, and May 4, 2010.

On August 31, 2010, Dr. Laura Griffith, D.O., reviewed Steele's medical records and provided Disability Determination Services ("DDS") with two physical residual functional capacity ("RFC") assessments for Steele. The first physical RFC assessment was for the time period of January 1, 2005 to May 13, 2010. In the first assessment, Dr. Griffith determined that Steele could: (1) occasionally lift and/or carry 20 pounds,

_____

[6] Administrative Record at 551.

(2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Steele could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Furthermore, Dr. Griffith limited Steele to only frequent fingering and handling with her right hand. Dr. Griffith found no visual, communicative, or environmental limitations.

The second RFC assessment anticipated that Steele would fully recover from lumbar disc disease and right hand tendon repair by May 14, 2011.[7] In her second assessment, Dr. Griffith determined that in the future, after May 14, 2011, Steele could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that in the future Steele could occasionally climb, balance, stoop, kneel, crouch, and crawl. Lastly, Dr. Giffith found that in the future Steele would have no manipulative, visual, communicative, or environmental limitations.

On October 4, 2010, Dr. Lon Olsen, Ph.D., reviewed Steele's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Steele. On the Psychiatric Review Technique assessment, Dr. Olsen diagnosed Steele with ADHD, depressive disorder, anxiety disorder, and history of marijuana abuse. Dr. Olsen determined that Steele had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment,

---

[7] Parenthetically, the Court notes that this is the first time it has encountered a future RFC assessment for a specified future recovery date.

Dr. Olsen found that Steele was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Olsen concluded that:

> [Steele] would be capable of performing 3- and 4-step activities that do not require intense concentration and that do not require extensive social interaction. She will need some support when adjusting to changes in routine.

(Administrative Record at 918.)

On August 8, 2011, Steele was referred by DDS to Dr. Carroll D. Roland, Ph.D., for a psychological evaluation. Dr. Roland outlined Steele's "presenting problem" as follows:

> [Steele] reports that she is unable to work because of "herniated discs and pinched sciatic nerve . . . I keep falling down . . . I have a really bad memory, and it keeps getting worse . . . I have migraine headaches every other day [that] last all day." She further reports limited range of motion in 2 fingers on her right hand secondary to having the tendons in the fingers severed and the surgery not resulting in full [range of motion] and loss of grip strength.
>
> [Steele] reports a 25 pound weight lifting restriction, reportedly is unable to walk more than 2-3 blocks and has difficulty ascending and descending stairs without stopping due to [shortness of breath]. She can stand for 5 minutes and can sit for 1 hour.

(Administrative Record at 1189.) Upon examination, Dr. Roland found Steele to have: (1) appropriate attention; (2) fair concentration; and (3) intact memory, indicating the ability to remember 2- and 3- step instructions. Dr. Roland further noted that "[d]espite alleging impaired memory, her performance on the [mental status evaluation] was more

than sufficient for entry level full time competitive employment."[8]   Dr. Roland administered the Beck Depression Inventory-II test. Results showed severe depression; however, Dr. Roland opined that severe depression was not consistent with Steele's clinical presentation. The test also indicated that Steele suffered from moderate anxiety. Dr. Roland diagnosed Steele with major depressive disorder (recurrent, mild to moderate), anxiety disorder, and ADHD. Dr. Roland concluded that Steele's primary deterrent to competitive employment would be her physical limitations.

On March 15, 2013, at the request of Steele's attorney, Dr. M.A. Chowdhry, M.D., Steele's treating psychologist, filled out "Mental Impairment Interrogatories" for Steele. Dr. Chowdhry diagnosed Steele with anxiety disorder, depressive disorder, and ADHD. Steele's signs and symptoms included: poor memory, mood disturbance, emotional liability, recurrent panic attacks, difficulty thinking and concentrating, and generalized persistent anxiety. Dr. Chowdhry noted that "[b]ecause memory is poor, [Steele] has trouble completing tasks [of] daily living and taking meds."[9] Dr. Chowdhry opined that Steele's prognosis was "poor" and indicated that she "has tried a number of medications and functioning has deteriorated."[10] Dr. Chowdhry determined that Steele would be unable to perform or function in the following areas necessary for employment: understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods of time, maintaining regular attendance, being punctual within customary tolerances, completing a normal workweek, responding appropriately to changes in the work setting, traveling in unfamiliar places or using public transportation, and setting realistic goals or making plans independently of

---

[8] Administrative Record at 1194.

[9] Administrative Record at 1355.

[10] *Id.*

others. Dr. Chowdhry also determined that Steele had marked difficulties in the following areas: performing activities within a schedule, working in coordination or proximity to others without being distracted by them, making simple work-related decisions, completing a normal workday, and being aware of normal hazards and taking appropriate precautions. Lastly, Dr. Chowdhry opined that Steele would miss three or more days of work per month due to her impairments or treatment for her impairments.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Steele is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Steele had not engaged in substantial gainful activity since January 1, 2005. At the second step, the ALJ concluded from the medical evidence that Steele had the following severe impairments: migraine headaches, degenerative disc disease, limited use of the small and ring fingers on the right hand following flexor tendon surgery, mood disorder, anxiety disorder, and ADHD. At the third step, the ALJ found that Steele does not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Steele's RFC as follows:

> [Steele] has the residual functional capacity to perform sedentary work . . . except [she] cannot climb ladders, ropes, or scaffolding, but she can occasionally stoop, crouch, kneel, or crawl. Ms. Steele is able to do all lifting, carrying, pushing, and pulling required by sedentary work activity when using both of her hands. However, she has no use of the ring finger or small finger in her dominant right hand. Nevertheless, she is able to handle objects with her dominant right hand, but she cannot manipulate using those two fingers. Finally, Ms. Steele is limited to simple, routine, and repetitive types of work that does not require close attention to detail. The work must be so simple and unchanging that [Steele] need not respond, adjudge, or react to any changes in the work environment.

(Administrative Record at 19.) Also at the fourth step, the ALJ determined that Steele could not perform her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Steele could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Steele was not disabled.

## B. Objections Raised By Claimant

Steele argues that the ALJ erred in five respects. First, Steele argues that the ALJ failed to properly consider the opinions of her treating psychiatrist, Dr. Chowdhry. Second, Steele argues that the ALJ failed to properly consider the opinions of the State

Agency medical consultants in determining her mental impairments. Third, Steele argues that the ALJ failed to properly weigh the Social Security Administration's determination that she was unable to perform substantial gainful activity for the 364-day period between May 14, 2010 and May 13, 2011. Fourth, Steele argues that the ALJ failed to properly evaluate her subjective allegations of pain and disability. Lastly, Steele argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Dr. Chowdhry's Opinions

Steele argues that the ALJ failed to properly evaluate the opinions of her treating psychiatrist, Dr. Chowdhry. Specifically, Steele argues that the ALJ failed to properly weigh Dr. Chowdhry's opinions. Steele also argues that the ALJ's reasons for discounting Dr. Chowdhry's opinions are not supported by substantial evidence in the record. Steele concludes that this matter should be remanded for further consideration of Dr. Chowdhry's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the

ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions of Dr. Chowdhry as follows:

> On March 15, 2013, Dr. Chowdhry opined that [Steele] suffered from marked to extreme limitations in workplace

functioning. As a result, she would miss employment more than three days of work per month. The undersigned . . . gives this opinion limited weight, because the severity of assessed limitations is not consistent with the narrative reports or global assessments of functioning from the longitudinal record with Black Hawk Grundy Mental Health. Despite his checkmarks near many extreme limits on the form, his clinical notes consistently report that she is "doing well." That inconsistency tends to detract from the weight those form opinions are due. Additionally, it is not consistent with the conservative and outpatient treatment record, the documented objective findings, and Ms. Steele's reported ongoing capabilities.

(Administrative Record at 25.)

Here, the ALJ thoroughly reviewed Steele's medical records and fully considered the opinions of all treating, examining, and non-examining medical sources, including Dr. Chowdhry's opinions.[11] Thus, having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Chowdhry. Also, the Court finds the ALJ provided "good reasons" for rejecting Dr. Chowdhry's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 2. *Non-Examining Consultative Medical Source Opinions*

Steele argues that the ALJ failed to properly evaluate the opinions of the state agency medical consultants. Steele maintains that the ALJ failed to properly consider the various opinions of non-treating consultative doctors in making his RFC assessment for Steele. In particular, Steele asserts that the ALJ's RFC assessment is flawed because the

---

[11] *See* Administrative Record at 19-26 (providing a thorough discussion of Steele's medical history and treatment).

ALJ failed to take into account the consultative state agency psychologist's opinion that she has moderate limitations in social skills. Steele maintains that the ALJ's failure to address any social limitations in his RFC assessment is "clear error." Steele concludes that this matter should be remanded for further consideration of the opinions of the non-examining state agency medical consultants.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately

developed the record; rather, such an assessment is made on a case-by-case basis."
*Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In his decision, the ALJ thoroughly addressed the consultative opinions as follows:

> As for opinions evidence, Social Security Ruling 96-6p requires that the opinions of State agency medical and psychological consultants be treated as expert opinion evidence from nonexamining sources. The undersigned has considered their opinions. The State agency consultants concluded that [Steele] retained the capacity to perform a reduced range of light work activity with postural and manipulative non-exertional restrictions. The undersigned gives this opinion partial weight, as the additional evidence submitted at the hearing level . . . documents additional exertional and non-exertional restrictions.
>
> The State consultants additionally concluded that [Steele] suffered from moderate limitations in social functioning, concentration, persistence, and pace. Nevertheless, Ms. Steele retained the capacity to perform 3-4 step activities that do not require intense concentration or social interaction.[12] The

---

[12] *See* Administrative Record at 918. Here, Dr. Olsen, the reviewing state agency psychologist, opined that "[Steele] would be capable of performing 3- and 4-step activities (continued...)

> undersigned additionally gives this opinion partial weight, as the social restrictions are not entirely consistent with the longitudinal conservative treatment record, the documented objective findings, and [Steele's] reported ongoing capabilities.

(Administrative Record at 24-25.)

Here, the ALJ thoroughly reviewed Steele's medical records and fully considered the opinions of all medical sources, including the state agency consultative reviewing sources.[13] Specifically, the ALJ addressed the state agency consultative opinions and determined that partial weight should be given to their opinions.[14] Moreover, the ALJ explicitly noted that he was only giving the state agency opinion of Steele's social limitations partial weight because the state agency psychologist stated "[Steele] would be capable of performing 3- and 4-step activities that do not require intense concentration and that do not require extensive social interaction."[15]

Thus, the Court concludes that the ALJ properly considered and weighed the opinion evidence provided by the consultative medical sources. Specifically, the ALJ explained his findings with regard to the state agency psychologist's opinions, and provided "good reasons" both explicitly and implicitly for the weight given to those opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, including the opinions of state agency consultative doctors,

---

[12](...continued)
that do not require intense concentration and that do not require extensive social interaction." *Id.*

[13] *See* Administrative Record at 19-26.

[14] *Id.* at 25.

[15] Administrative Record at 918.

the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Initial Disability Review

Steele argues that the ALJ failed to properly consider and address the Social Security Administration's ("SSA") initial review of her disability application, in which the initial reviewer determined that she was disabled for a period of time less than 12 months. Specifically, in her brief, Steele argues that:

> the ALJ makes no mention of the fact that SSA determined Ms. Steele was disabled from May 14, 2010 to May 13, 2011, just one day short of the required twelve month period necessary to be entitled to benefits. On November 3, 2010, after Ms. Steele filed her initial application, she was found to be not disabled, because the disability examiner predicted she would be capable of sedentary work by May 14, 2011. . . . There is no evidence in the record which supports any medical improvement in Ms. Steele's combination of impairments, which would support the finding that she became able to perform substantial gainful activity on May 14, 2011. SSA's determination that Ms. Steele could not perform substantial gainful activity for the 364 day period between May 14, 2010 and May 13, 2011, together with the subsequent evidence of record leaves no doubt that Ms. Steele had been disabled for a period greater than twelve months by the time of the Hearing in this case.

Steele's Brief and Argument (docket number 14) at 27-28. The Commissioner responds that the initial determination denying benefits, dated November 3, 2010, was not a final decision, and therefore, is not subject to judicial review. The Commissioner asserts that:

> in the explanation of this initial determination, the Commissioner noted that at all times from January 1, 2005,

[Steele's] alleged onset date, to the date of the initial determination, November 3, 2010, [Steele] had the mental capability to perform unskilled work. However, she would not be able to perform sedentary work until May 14, 2011. Thus, the 364-day period of disability was based on [Steele's] hand injury, which occurred around May 14, 2010. The Commissioner believed that [Steele] would recover from her hand injuries by May 14, 2011, at which time she would be able to perform simple, routine, sedentary work.

Commissioner's Brief (docket number 16) at 14. The Commissioner points out that Steele ended physical therapy for her hand injury in November 2010. At that time, Steele estimated that her hand recovery was 80 percent. Steele was urged to continue her home exercise program.[16] The Commissioner further points out that the record shows Steele had no further treatment for her hand problems. The Commissioner concludes that:

While [Steele] alludes to migraines and back pain in her brief, she puts forth no evidence of worsening hand pain or increased limitations since May 2011. Therefore, the record evidence supports the Commissioner's November 2010 initial determination that [Steele] would be capable of performing sedentary work by May 14, 2011. Thus, [Steele] failed to assert reversible error.

*Id.* at 15.

The Court finds no merit in Steele's argument. On November 3, 2010, the SSA explained Steele's *denial* of benefits at the *initial* review stage as follows:

Physically, [Steele] is limited to light work from 05/01/2005 through 5/13/2010. [Steele] is disabled from 05/14/2010 through 05/13/2011. [Steele] will be capable of performing sedentary work by 05/14/2011. Mentally, [Steele] is limited to unskilled work from 01/05/2005 to current. From 05/01/2005 through 05/13/2010, [she] was capable of performing her past job as an Eyelet-Machine Operator. [Her] past work will be precluded as of 05/14/2011 due to the

---

[16] *See* Administrative Record at 1128.

> physical demands of the occupations. Using Vocational Rule
> 201.19 as a guide, a decision of not disabled is recommended.
> A list of unskilled jobs [Steele] could be expected to perform
> as of 05/14/2011 would include: Charge Account Clerk, . . .
> Lens Inserter, . . . and Pin-or-Clip Fastener[.] . . . Therefore,
> there exists significant numbers of jobs in the economy for
> [Steele] to perform.

(Administrative Record at 91.) Unlike the reviewer at the initial review stage, the ALJ had

Steele's entire medical record, including her medical records after November 3, 2010, and

through 2013. It makes little difference to the outcome of the ALJ's decision whether an

initial reviewer, in November 2010, believed Steele was "disabled" for an unspecified

period between May 14, 2010 and May 13, 2011, or speculated that Steele would be

capable of performing sedentary work by May 14, 2011, because the ALJ actually

reviewed Steele's medical records between November 2010 and May 14, 2011, and

concluded that Steele is not entitled to disability benefits. Moreover, as discussed in

sections *IV.B.1* and *B.2* of this decision, the ALJ thoroughly reviewed and addressed

Steele's medical history, and based his RFC assessment for Steele on a fully and fairly

developed record.[17] Accordingly, the Court finds no merit to Steele's argument, and no

error in the ALJ's decision based on the views of an initial reviewer in November 2010.

### 4.    *Credibility Determination*

Steele argues that the ALJ failed to properly evaluate her subjective allegations of

pain and disability. Steele maintains that the ALJ's credibility determination is not

supported by substantial evidence. The Commissioner argues that the ALJ properly

considered Steele's testimony, and properly evaluated the credibility of her subjective

complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration

to all the evidence presented relating to subjective complaints, including the claimant's

---

[17] *See* Administrative Record at 19-26.

prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v.*

*Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ generally determined that:

> After careful consideration of the evidence, the undersigned finds that [Steele's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Steele's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Administrative Record at 15.) More specifically, the ALJ determined that:

> The[] objective findings of [Steele's] treating and examining sources do not support the severity of assessed limitations that Ms. Steele has alleged. As noted above, the record reflects that [Steele's] chronic headaches were treated on an outpatient basis with prescribed medications. There is no evidence of an acute neurologic irregularity providing an etiology for [her] symptoms or causing acute complications in functioning. The record reflects that [Steele's] tendon irregularity was treated surgically, and follow-up studies noted ongoing limitations in right upper extremity functioning. Diagnostic studies initially confirmed significant L5-S1 foraminal stenosis, as there was a large disc protrusion and the L5 and S1 with some impingement into the S1 nerve root. [Steele] repeatedly refused surgical treatment opting for conservative measures. Nevertheless, the record reflects [Steele's] good response to physical therapy, prescribed medications, and pain relieving

injections. Despite ongoing complaints of pain, giveaway weakness, and reduced lower extremity strength, follow-up studies noted normal neurologic, mental status, motor, sensory, deep tendon reflexes, coordination, and gait examinations.

As for [Steele's] mental limitations, the record additionally reflects treatment that was conservative and performed on an outpatient basis. Treatment records reflect no more than mild to moderate limitations in functioning. There is no evidence of a mental health hospitalization or a symptom exacerbation resulting in a loss of adaptive functioning. Consultative examinations noted no evidence of circumstantiality, tangentiality, flight of ideas, suicidal ideation, homicidal ideation, ideas of reference, paranoia, delusions, hallucinations, or first-rank symptoms.

In spite of ongoing physical irregularities, mental impairment symptoms, and medication side effects, the record reflects that Ms. Steele retains the capacity to take care of most personal needs, clean the cat box, make her bed, sweep once in a while, drive, shop for groceries two times per month, complete small loads of laundry, handle her finances, read, enjoy movies, complete puzzles, collect rocks, talk on the phone, go for walks if it is not too hot, socialize with others, and attend regular doctor's appointments (Exhibits 6E-7E, 16E-17E, 20E, and 22E), albeit at a slower pace and while accounting for her chronic impairment symptoms. [Steele's] statements regarding the severity of her limitations are not entirely credible, to the extent they are inconsistent with the residual functional capacity, because they are not supported by the longitudinal conservative treatment record, documented objective findings, and Ms. Steele's reported ongoing capabilities.

(Administrative Record at 24.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Steele's treatment history, medical history, functional restrictions, and activities of daily living in making his credibility determination. Thus, having reviewed the entire record,

the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Steele's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Steele's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 5. Hypothetical Question

Steele argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of her impairments. Steele also argues that the ALJ's hypothetical was incomplete and did not contemplate all of her functional limitations. Steele maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th

Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Steele's testimony in determining Steele's impairments.[18] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

## V. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Chowdhry and the state agency medical consultants. Furthermore, the Court finds no merit in Steele's argument regarding the initial disability reviewer's determination of Steele having a disability lasting less than 12 months in his initial review. The ALJ also properly determined Steele's credibility with regard to her subjective complaints of disability and pain. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

---

[18] *See* Administrative Record at 19-26.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 28th day of _January_, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA